IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

RECEIVED

2006 NOV -2  A 10: 52

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| JOHN DAVID BRANNON and<br>TERESA GAYLE BRANNON, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) <br> ) |
| FINANCE AMERICA, LLC;<br>BNC MORTGAGE, INC.;<br>LEHMAN BROTHERS BANK, FSB;<br>LEHMAN BROTHERS HOLDINGS, INC.;<br>DANA CAPITAL GROUP, INC.;<br>BRIDGE CAPITAL CORPORATION;<br>RESIDENTIAL FINANCE AMERICA, LLC<br>a/k/a RFA, LLC; and TIEMPO ESCROW II, | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) |

Civil Action No.: 1: 06CV996-M
H
T

DEMAND FOR JURY TRIAL

## COMPLAINT

## PARTIES

1.    Plaintiffs **JOHN DAVID BRANNON** and **TERESA GAYLE BRANNON** are individuals over the age of nineteen (19) years and reside in Houston County, Alabama.

2.    Defendant **FINANCE AMERICA, LLC (hereafter "FA")** is a California limited liability company.

3.    Defendant BNC Mortgage, Inc. is a wholly owned subsidiary of Defendant **LEHMAN BROTHERS BANK, FSB**, a Delaware corporation.

4.    Defendant Lehman Brothers Bank, FSB, is a wholly owned subsidiary of Defendant **LEHMAN BROTHERS HOLDINGS, INC.**, a Delaware corporation.

5.    Defendants BNC Mortgage, Inc.; Lehman Brothers Bank, FSB; and Lehman Brothers Holdings, Inc. are referred to collectively herein as "**BNC/LEHMAN.**"

6.    Defendant **DANA CAPITAL GROUP, INC. (hereafter "DANA")** is a California corporation qualified to do business in Alabama.

7.    Defendant **BRIDGE CAPITAL CORPORATION (hereafter "BRIDGE")** is a California corporation.

8.    Defendant **RESIDENTIAL FINANCE AMERICA, LLC a/k/a RFA, LLC (hereafter "RFA")** is a Wisconsin corporation qualified to do business in Alabama.

9.    Defendant **TIEMPO ESCROW II (hereafter "TIEMPO")** is a California corporation.

## JURISDICTION and VENUE

10.    This court has federal question jurisdiction over the issues herein pursuant to 15 U.S.C. § 1601 *et. seq.,* the Truth In Lending Act; 12 U.S.C. § 2601, the Real Estate Settlement Procedures Act; 15 U.S.C § 1681 *et seq.*, the Fair Credit Reporting Act; and, 15 U.S.C. § 1691 *et seq.*, the Equal Credit Opportunity Act.

11.    The court has pendent jurisdiction over the state law claims contained herein.

12.    The Court has personal jurisdiction over Plaintiffs as residents of Houston County, Alabama.

13.    Venue is proper in this Court in that Plaintiffs are residents of Houston County, Alabama; the real property made the basis of this action is situated in Houston County, Alabama; the transaction made the basis of this action occurred in Houston County, Alabama; and, the Defendants have engaged in continual and systematic business dealings within Houston County, Alabama.

## FACTUAL ALLEGATIONS

14.    In or about mid-September 2005, Plaintiffs submitted an on-line Internet application for a refinance of their existing mortgage loan on their property located at 909 Deborah Street, Dothan, Alabama 36301.

2

15.    In response to their on-line application, several lenders who assumedly subscribe to or support the website used by Plaintiffs responded to the application through interstate telephone calls.

16.    One of the responders with whom Plaintiff had dealings was Elmer Roldan. Roldan held himself out as a "Credit Manager" and "Sr. Loan Officer" employed by BRIDGE and/or DANA and/or RFA. *(See email from David Brannon to Elmer Roldan at Roldan's email address of elmer@bridgecapcorp.com attached as Exhibit "A"; see also Elmer Roldan's business card from Residential Finance America with email address elmer@rfanewport.com attached as Exhibit "B"; see also Dana Capital Group Notice to the Home Loan Applicant listing Elmer Roldan as "Sr. Loan Officer" attached as Exhibit "C")*

17.    Plaintiffs' interest in refinancing their existing mortgage was based upon their desire to pay off other creditors in order to reduce their monthly budget and to cash-out $6,000 to $7,000 of their equity.

18.    Mr. Roldan assured Plaintiffs that he could secure a re-finance for them that would have an interest rate or APR of 7.5%; and, would result in payments of $866.00 including tax and insurance escrow account payments. *(See Exhibit "D" attached)*

19.    Mr. Roldan informed Plaintiffs that the amount of cash-out they received would depend upon the appraised value of Plaintiffs' home.  When the appraised value of Plaintiffs' home was actually higher than Plaintiffs had first estimated, Mr. Roldan informed Plaintiffs that could receive more than the requested $6,000 to $7,000 cash out they initially requested.

20.    The above described communications occurred between mid-September and late October 2005 through interstate telephone calls.

21.    Between early October 2005 and the date of closing on or about November 10, 2005, Mr. Roldan repeatedly promised the Plaintiffs that the closing of their refinance loan would take place "next Tuesday", then "this Friday", etc.

22.    Between early October 2005 and the date of closing on or about November 10, 2005, while Mr. Roldan was repeatedly promising Plaintiffs that closing would occur every few

days, Mr. Roldan also instructed Plaintiffs not to pay their existing home mortgage payments because "it would require a rework of all the paper work".

23.    On or about November 2, 2005, Plaintiffs received certain pre-closing disclosures including a Good Faith Estimate and Preliminary Truth in Lending Disclosure Statement. Finance America, LLC is identified as the lender on the pre-closing disclosures. Among other gross misrepresentations made through these pre-closing disclosures, the Good Faith Estimate reports that the interest rate on Plaintiffs' loan will be 8.105%; and, the Preliminary Truth in Lending Disclosure Statement reports that the Annual Percentage Rate on Plaintiffs' loan will be 8.915% and that the loan has no demand feature. *(See Good Faith Estimate attached as Exhibit "E"; and, Preliminary Truth in Lending Disclosure Statement attached as Exhibit "F")*

24.    On or about November 10, 2005, an employee of Defendant TIEMPO came to Plaintiffs' home to consummate the closing of the subject loan. Upon information and belief, the employee was not a licensed Alabama lawyer.

25.    Although Plaintiffs were rushed through the closing being told where to sign with no explanation of the various documents, Plaintiffs were able to discover that the monthly payment, interest rate and Annual Percentage Rate were much higher than promised by Mr. Roldan through his verbal term quotes about this specific loan; and, higher than the pre-closing disclosures received just a few days earlier and detailed at paragraph 19 of this complaint. *(See Final Truth in Lending Disclosure reporting an APR of 11.405% attached as Exhibit "G"; and, Amended Escrow Instructions reporting a starting interest rate of 9.2250% attached as Exhibit "H")*

26.    Plaintiff David Brannon immediately halted the closing and chastised the TIEMPO employee about the switch in terms. The TIEMPO employee informed Plaintiffs that she had seen this happen to many borrowers.

27.    While the TIEMPO employee called her office from Plaintiffs' home for instructions, Mr. Brannon called Mr. Roldan and protested the switch of terms. Mr. Roldan told Plaintiff that someone must have made a mistake in preparing the final documents. Roldan further instructed Plaintiff to finish the closing and then sign the Right to Cancel form and give

4

the executed form to the TIEMPO employee. Mr. Roldan promised to "fix" the documents by changing the terms back to what he had promised earlier.

28.    When Plaintiff asked why the cost of the loan increased so dramatically, Mr. Roldan said that the increase was due to the fact that Plaintiffs were behind in the payments on their existing mortgage.

29.    Plaintiff executed the right to cancel form and gave it to the TIEMPO employee. Plaintiff made a copy of the signed right to cancel form for his own file and, emailed a scanned copy of the executed Right to Cancel form to Mr. Roldan the next day, November 11, 2005. *(See executed Right to Cancel form attached as Exhibit "I")*

30.    Plaintiff made numerous calls to various employees of the Defendants following the closing and was finally told that there was nothing that could be done. The loan was not rescinded or cancelled pursuant to Plaintiffs'' request.

31.    On or about June 26, 2006, Plaintiffs received a demand and acceleration letter from a lawyer representing "MERS." This although the Truth in Lending Disclosure reports that this loan had no demand feature.

32.    Defendant TIEMPO engaged in the unauthorized practice of law during the closing of this loan.

33.    Instead of receiving the $6,000 to $7,000 they were promised in cash-out, much of Plaintiff's equity was used to pay exorbitant broker and lender fees, including "junk fees", to the Defendants. *(See HUD-1 Settlement Statement attached as Exhibit "J")*

34.    All Defendants except TIEMPO failed to provide the Plaintiffs with reasonably accurate estimates or complete information about their specific loan in contravention of the expressed intent of the Truth in Lending Act at 15 U.S.C. § 1601(a).

35.    The Defendants are engaged in a pattern and practice of willfully and knowingly providing false and inaccurate information to consumers in order to "bait" and lure them into a series of decisions based upon false and misinformation. The deal is switched to a more costly

5

loan at closing when the consumers are least able financially and emotionally to resist the hard sell tactics of the Defendants.

36.    The Defendants failed to provide the Plaintiffs with the correct number of accurately completed Right to Cancel forms at the time of closing as required by 15 USC § 1635 et seq. They also refused to cancel or rescind the loan upon delivery of an executed right to cancel form.

37.    The Defendants made an adverse decision on Plaintiffs' loan application by offering a substantially different loan product and loan terms.

38.    The transaction included excessive and junk fees, a higher annual percentage rate, and was in-opposite to what Defendants had represented in telephone conversations in which oral representations about their specific loan terms were made to Plaintiffs.

## COUNT I
### Negligence

39.    Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

40.    Defendants DANA, BRIDGE, BNC/LEHMAN, TIEMPO, RFA and FA were negligent in the marketing, origination, processing, underwriting, closing, and/or funding of Plaintiffs' mortgage application and loan. Their conduct fell below the standard of care for mortgage lenders, brokers and closing agents. As a direct and proximate result, Plaintiffs were damaged as set out below. To the extent Defendants' conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

41.    Defendants DANA, BRIDGE, BNC/LEHMAN, TIEMPO, RFA and FA negligently performed quality control on loan files they originated, processed, underwrote, closed, funded, and/or purchased. Their conduct fell below the standard of care for mortgage lenders, brokers and closing agents. As a direct and proximate result, Plaintiffs were damaged as set out below. To the extent the Defendants' conduct was reckless or wanton, Plaintiffs seek punitive damages.

42.    Defendants DANA, BRIDGE, RFA and FA undertook to volunteer and provide oral and written pre-closing disclosures to Plaintiffs about the terms applicable to their specific loan. They did so negligently by failing to timely, accurately, and completely inform Plaintiffs of the details and costs of the transaction. Their conduct fell below the standard of care for mortgage lenders and brokers. As a direct and proximate result, Plaintiffs were damaged as set out below. To the extent Defendants' conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

43.    Defendants DANA, BRIDGE, RFA and FA negligently, intentionally or recklessly misrepresented and/or concealed the terms of Plaintiffs' loan. Their conduct fell below the standard of care for mortgage lenders and brokers. As a direct and proximate result, Plaintiffs were damaged as set out below. To the extent Defendants' conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

44.    Although under no duty to so, Defendants DANA, BRIDGE, TIEMPO, RFA and FA undertook to originate, process, close, fund, purchase and/or service a mortgage loan for Plaintiffs. They did so negligently or recklessly and, as a proximate result, Plaintiffs were injured as set forth below. To the extent Defendants' conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

45.    Defendants DANA, BRIDGE, BNC/LEHMAN, RFA and FA negligently managed, supervised, trained and/or instructed its agents and/or subsidiaries in the origination, processing, underwriting, closing and funding of mortgage loans. To the extent Defendants' conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

46.    Defendants DANA, BRIDGE, BNC/LEHMAN , RFA and FA negligently failed to promulgate, implement, communicate and enforce rules and procedures whereby applications obtained by their agents, subsidiaries and/or brokers were properly monitored, reviewed and/or verified. To the extent Defendants' conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

47.     Defendants DANA, BRIDGE, BNC/LEHMAN, RFA and FA negligently failed to conduct reasonable due diligence in regards to their agents or brokers before contracting with them to accept applications for mortgage loans. To the extent Defendants' conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

48.     Defendants DANA, BRIDGE, RFA, BNC/LEHMAN and FA negligently failed to conduct reasonable due diligence and quality control in regards to their agents and brokers after accepting applications for mortgage loans. To the extent Defendants' conduct was reckless, Plaintiffs seek punitive damages.

49.     Defendants DANA, BRIDGE, RFA and FA negligently failed to conduct reasonable due diligence and quality control in regards to Defendant TIEMPO before retaining them as their closing agent. To the extent Defendants' conduct was reckless, Plaintiffs seek punitive damages.

50.     All named Defendants' acts of negligence were committed under circumstances of insult and contumely.

51.     All Defendants breached their legal, contractual and/or assumed duty of reasonable care to the Plaintiffs. As a proximate result, Plaintiffs were injured as set forth below. To the extent Defendants' conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment from the Defendants, jointly and severally for compensatory and punitive damages in an amount to be awarded by a jury.

## COUNT II
### Negligent Supervision

52.     Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

53.     Defendants DANA, BRIDGE, BNC/LEHMAN, TIEMPO, RFA and FA negligently trained and/or supervised their agents and employees. Defendants failed to

promulgate, implement, communicate and enforce rules, systems and/or procedures which, if reasonable, would have prevented the wrongful conduct afore-stated. Their conduct fell below the standard of care for mortgage lenders, title agents and brokers. Defendants' acts of negligence were committed under circumstances of insult and contumely. As a direct and proximate result, Plaintiffs were damaged as set out below. To the extent the Defendants' conduct was reckless, wanton, or part of a pattern and practice of misinforming and deceiving consumers, Plaintiffs seek punitive damages.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment from the Defendants, jointly and severally for compensatory and punitive damages in an amount to be awarded by a jury.

### COUNT III
### Promissory Fraud
### Fraud

54.    Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

55.    Defendants DANA, BRIDGE, RFA and FA fraudulently, recklessly, intentionally, or through mistake; concealed, suppressed or misrepresented the terms of Plaintiffs' loan. The facts, persons, events and circumstances that give rise to the claims in this count and other counts within this complaint include, but are not limited to the facts set forth in paragraphs 10-34; within the Factual Allegations above.

56.    Defendants DANA, BRIDGE, RFA and FA are engaged in a pattern and practice of misinforming consumers, including Plaintiffs, of the terms of their loans. The practice is consummated on unwary consumers with grossly inaccurate verbal pre-closing disclosures, followed by grossly inaccurate written pre-closing disclosures. The consumers, including Plaintiffs, are baited with a deal these Defendants never intend to honor, then switched to another, more costly deal at closing.

57.    Through the process of misinformation including false and inaccurate verbal pre-closing disclosures and written pre-closing disclosures, Defendants DANA, BRIDGE, RFA and FA baited Plaintiffs on the subject loan product by initially presenting the Plaintiff with

9

favorable loan terms, *which the Defendants never intended to honor*. Once in the loan closing "Hot Box", the terms were switched and then "sold" by their agent TIEMPO to a more costly deal for Plaintiffs and a more profitable deal for the Defendants. As such, the Defendants engaged in promissory fraud in order to deceive Plaintiffs.

58.    Defendants DANA, BRIDGE, RFA and FA gained the trust and confidence of Plaintiffs then used trick and artifice to accomplish the aforementioned bait and switch.

59.    Defendants DANA, BRIDGE, BNC/LEHMAN, RFA and FA ratified the fraud and promissory fraud by funding the loan, selling the loan and/or continuing to collect payments on the loan from Plaintiffs.

60.    Plaintiffs reasonably and justifiably relied upon Defendants' misrepresentations including those by concealment and promissory fraud, to their detriment. As a direct and proximate result, Plaintiffs were injured as set forth below.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs demand judgment from the Defendants, jointly and severally for compensatory and punitive damages in an amount to be awarded by a jury.

## COUNT IV
### Negligence Per Se

61.    Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

62.    Defendants DANA, BRIDGE, RFA and FA violated various provisions of 15 U.S.C. § 1601 et. seq., The Truth in Lending Act; 12 U.S.C § 2601 et seq., The Real Estate Settlement Procedures Act; the Fair Credit Reporting Act, 15 U.S.C § 1681 et seq.; and, the Equal Credit Opportunity Act 15 U.S.C § 1691 et seq.; as set out below. The Acts are intended for the benefit of the special class of citizens to which Plaintiffs belong. The conduct of Defendants damaged Plaintiffs and amounts to Negligence Per Se. Defendants' acts were committed under circumstances of insult and contumely.

63.    Defendant TIEMPO as closing agent, engaged in the unauthorized practice of law contrary to § 34-3-6 Alabama Code (1975). § 34-3-6 is intended for the benefit of the special

class of citizens to which Plaintiffs belong.  The conduct of TIEMPO damaged Plaintiffs and amounts to Negligence Per Se.

**WHEREFORE, PREMISES CONSIDERED** Plaintiffs demand compensatory and punitive damages from the Defendants, jointly and severally as set forth below.

## COUNT V
### Violations of the Federal Truth in Lending Act

64.    Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

65.    Defendants DANA, BRIDGE, RFA and FA through their agents and employees, violated or failed to comply with the FEDERAL TRUTH IN LENDING ACT, *15 U.S.C. § 1601 et. seq.* and its implementing Regulation Z  by providing false information and by failing to provide complete, accurate, proper and timely disclosures under the Act.  While not meant to be exhaustive of all violations of TILA, Plaintiffs allege Defendants violated the following:

a.    *§ 226.17(c)(1) Regulation Z:*  Defendants failed to provide pre-closing disclosures that reasonably reflected the legal obligations between the parties;

b.    *§ 226.17(c)(2)(i) Regulation Z:*  Defendants failed to make pre-closing disclosures based upon information reasonably available to it;

c.    *§ 226.17(c)(2)(i)(1) Official Staff Commentary to Regulation Z:* Defendants failed to use Good Faith and exercise reasonable due diligence in providing pre-closing disclosures to Plaintiffs;

d.    *15 U.S.C. § 1635(a); § 226.2(a)(11); § 226.23(a)(3); and § 226.23(b)(1) of Regulation Z:*  Defendant failed to provide the required number of accurately completed Right to Cancel forms to Plaintiffs.

e.    *§ 226.26(b) of Regulation Z as interpreted by the Official Staff Commentary at § 226.26(1) and § 226.26(b)(1):*  Defendants volunteered to provide cost of credit information to Plaintiffs orally, including rate

11

information specific to Plaintiffs' loan. They did so in a manner and form that violated these sections.

f. *15 U.S.C. § 1638(b)(2):*  Defendants failed to provide pre-closing disclosures to Plaintiffs within three (3) days of their initial application;

g. *§ 226.17(f)(4) Official Staff Commentary to Regulation Z:*  Defendants failed to use Good Faith and exercise reasonable due diligence in providing pre-closing disclosures to Plaintiffs;

h. *15 U.S.C. § 1631(d) and § 1638(b)(1):*  Defendants provided misleading disclosures designed to circumvent the purpose of TILA.

i. *15 U.S.C. § 1635(b):*  Defendants failed and refused to rescind or cancel the subject loan upon a timely request to do so.

**WHEREFORE,** Plaintiffs demand rescission of the subject note and mortgage, and a monetary judgment against Defendants for the maximum statutory damages trebled or doubled as allowed; actual damages including damages for mental anguish, emotional distress, humiliation, and embarrassment; the costs of this proceeding; and reasonable attorney's fees.

## COUNT VI
### Violations of the Real Estate Settlement Procedures Act

66.    Plaintiffs adopt and re-allege all paragraphs as if fully restated herein.

67.    The transaction at issue in this case is federally related mortgage loan subject to the provisions of RESPA 12 U.S.C § 2601 et seq.  The services of Defendants DANA, BRIDGE, TIEMPO, RFA and FA are settlement services within the meaning of RESPA at 12 U.S.C § 2602(3).

68.    Plaintiffs paid fees from the proceeds of their loan to the named Defendants in this count for various settlement services including but not limited to:  A "processing fee"; an "application fee"; an "underwriting fee"; "document preparation" fees; a "broker's fee"; and, other closing related fees.

69.    Defendants DANA and/or BRIDGE and/or RFA received an additional payment from FA in the form of a Yield Spread Premium (YSP).

70.    Defendants DANA, BRIDGE, TIEMPO, RFA and FA violated 12 U.S.C § 2607(a) and 24 C.F.R. § 3500.14(b), by paying fees, kickbacks or giving other things of value to one another pursuant to an understanding or written agreement that business incident to, or part of, a real estate settlement service involving federally related mortgage loans would be referred to each other.

71.    Defendants DANA, BRIDGE, TIEMPO, RFA and FA violated 12 U.S.C. § 2607(b) and 24 C.F.R. § 3500.14(c), by giving or accepting a portion, split or percentage of charges made or received for the rendering of real estate settlement services in connection with a transaction involving a federally related mortgage loan, other than for services actually performed.

**WHEREFORE,** Plaintiffs demand judgment against the named Defendants in this count for the maximum statutory damages trebled; actual damages including damages for mental anguish, emotional distress, humiliation, and embarrassment; the costs of this proceeding; and reasonable attorney's fees.

## COUNT VII
### Violations of the Fair Credit Reporting Act

72.    Plaintiffs adopt and re-allege all paragraphs as if fully restated herein.

73.    Upon information and belief, the refusal of Defendants DANA, BRIDGE, RFA and FA to extend credit on the terms for which Plaintiffs applied was based upon, or will be argued to have been based in whole or part on information contained in a consumer report.

74.    Said Defendants' denial of credit on the terms applied for is an adverse action under the Fair Credit Reporting Act, 15 U.S.C § 1681a(j).

75.    Said Defendants failed to provide Plaintiffs with the required notice under 15 U.S.C. § 1681m(a), advising Plaintiffs of the name, address and telephone number of the consumer reporting agency which supplied the report; a statement that the consumer reporting

13

agency did not make the credit decision and is unable to provide the consumer with the specific reason(s) the adverse action was taken; and, a statement of the consumer's right to obtain a free copy of the consumer report from the reporting agency and to dispute the accuracy or completeness of the report.

76.    Said Defendants' failure to provide required FCRA notices to Plaintiffs was a negligent, reckless or willful violation of the FCRA.

**WHEREFORE**, Plaintiffs demand judgment against the named Defendants in this count for the maximum statutory damages trebled where allowed; actual damages including damages for mental anguish, emotional distress, humiliation, and embarrassment; the costs of this proceeding; and reasonable attorney's fees.

### COUNT VIII

### Violations of the Equal Credit Opportunity Act

77.    Plaintiffs adopt and re-allege all paragraphs as if fully restated herein.

78.    Defendants DANA, BRIDGE, RFA and FA regularly extend, renew or continue credit; and/or regularly arrange for the extension, renewal or continuation of credit and are creditors within the meaning of the Equal Credit Opportunity Act (ECOA), 15 U.S.C § 1691a(e) and 12 C.F.R § 202.2(1) (Regulation B).

79.    Plaintiffs submitted an application in a manner sufficient and customary with these Defendants such that a credit decision was made.

80.    Plaintiffs applied for a mortgage loan with specific terms.

81.    Said Defendants' refusal to grant Plaintiffs credit on substantially the same terms as applied for was an adverse action as defined at 15 U.S.C. 1691(d)(6) of the ECOA.

82.    Said Defendants failed to provide the notice of adverse action required by the Act. The Defendants provided no written or verbal notice of adverse action prior to closing.

83.    The failure of these Defendants to provide the required notice was intentional and meant to conceal the "bait and switch" nature of the transaction.

**WHEREFORE**, Plaintiffs demand judgment against the named Defendants in this count for the maximum statutory/punitive damages of $10,000; the costs of this proceeding; and reasonable attorney's fees.

## COUNT IX

### Damages

84.    Plaintiffs adopt and re-allege all paragraphs as if fully restated herein.

85.    Defendants' wrongful conduct as stated above proximately injured Plaintiffs as follows:

      a.    Plaintiffs suffered and will continue to suffer substantial economic loss and expense.

      b.    Plaintiffs suffered and will suffer in the future emotional distress, mental anguish, humiliation, and embarrassment.

86.    To the extent Defendants' wrongful conduct was reckless, intentional, or wanton; part of a pattern and practice to misinform or deceive; and/or part of a pattern and practice of "bait and switch;" Plaintiffs are entitled to and demand punitive damages.

## PRAYER FOR RELIEF

87.    Plaintiffs adopt and re-allege all paragraphs above as if fully restated herein.

88.    Plaintiffs demand judgment as set out below from the Defendants, jointly and severally:

      a.    Compensatory and actual damages in an amount to be awarded by a jury;

      b.    Punitive damages in an amount to be awarded by a jury under each claim made by Plaintiffs whereby punitive damages are recoverable;

      c.    Actual damages under Plaintiffs' TILA, RESPA, ECOA and FCRA claims including but not limited to damages for mental anguish, emotional distress, humiliation, and embarrassment; trebled where allowed;

      d.    Maximum statutory damages (including treble damages as allowed) under TILA, RESPA, FCRA and ECOA;

      e.    Post-judgment interest;

f.     Costs of this proceeding; and,

g.     Reasonable attorney's fees.


Respectfully Submitted,


ROBERT E. KIRBY, JR. (KIR013)
Attorney for Plaintiff
SMITH, HANSON & KIRBY, LLC
4401 Gary Ave.
Fairfield, AL  35064
Telephone:     (205) 786-3775
Fax:     (205) 780-8540
Email:     bekatty@bellsouth.net


**PLAINTIFF HEREBY DEMANDS A STRUCK JURY IN THE TRIAL OF THIS CAUSE**


OF COUNSEL


**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL, RETURN RECEIPT, AS FOLLOWS:**

FINANCE AMERICA, LLC
c/o SILVA H. BABAIAN, Registered Agent
10324 BALBOA BLVD.
GRANADA HILLS, CA  91344

BNC MORTGAGE, INC.
c/o CORPORATION SERVICE COMPANY, Registered Agent
2711 CENTERVILLE RD., STE. 400
WILMINGTON, DE  19808

LEHMAN BROTHERS BANK, FSB
c/o THE PRENTICE-HALL CORPORATION SYSTEM, Registered Agent
2711 CENTERVILLE RD., STE. 400
WILMINGTON, DE  19808

LEHMAN BROTHERS HOLDINGS, INC.
c/o PRENTICE HALL CORPORATION SYS INC.
150 S. PERRY ST.
MONTGOMERY, AL  36104

DANA CAPITAL GROUP, INC.
c/o THE CORPORATION COMPANY, Registered Agent
2000 INTERSTATE PARK DR., STE. 204
MONTGOMERY, AL  36109

BRIDGE CAPITAL CORPORATION
c/o CT CORPORATION SYSTEM, Registered Agent
818 W. 7TH ST.
LOS ANGELES, CA  90017

RESIDENTIAL FINANCE AMERICA, LLC
a/k/a RFA, LLC
c/o NATIONAL REGISTERED AGENTS, INC., Registered Agent
150 S. PERRY ST.
MONTGOMERY, AL  36104

TIEMPO ESCROW II
c/o STEVE DAVIS, ESQ., Registered Agent
9171 WILSHIRE BLVD.
BEVERLY HILLS, CA  90210

17

## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

JOHN DAVID BRANNON and )
TERESA GAYLE BRANNON, )
            )
    Plaintiffs, )
            )
v. )   **Civil Action No.:**
            )
FINANCE AMERICA, LLC; )   **DEMAND FOR JURY TRIAL**
BNC MORTGAGE, INC.; )
LEHMAN BROTHERS BANK, FSB; )
LEHMAN BROTHERS HOLDINGS, INC.; )
DANA CAPITAL GROUP, INC.; )
BRIDGE CAPITAL CORPORATION; )
RESIDENTIAL FINANCE AMERICA, LLC )
a/k/a RFA, LLC; and TIEMPO ESCROW II, )
            )
    Defendants. )

### LIST OF EXHIBITS ATTACHED TO PLAINTIFFS' COMPLAINT

A.    Email from David Brannon to Elmer Roldan at Bridge Capital Corporation.

B.    Elmer Roldan's business card from Residential Finance America.

C.    Dana Capital Group Notice to the Home Loan Applicant.

D.    Bridge Capital Corporation Initial Package from Elmer Roldan.

E.    Finance America, LLC Good Faith Estimate.

F.    Finance America, LLC Preliminary Truth in Lending Disclosure Statement.

G.    Finance America, LLC Final Truth in Lending Disclosure.

H.    Tiempo Escrow II Amended Escrow Instructions.

I.    Finance America, LLC Right to Cancel form.

J.    HUD-1 Settlement Statement.