IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
JOHN DAVID BRANNON and        )
TERESA GAYLE BRANNON,         )
                              )
     Plaintiffs,              )
                              )
     v.                       )    CIVIL ACTION NO.
                              )    1:06cv996-MHT
FINANCE AMERICA, LLC; BNC     )       (WO)
MORTGAGE, INC.; LEHMAN        )
BROTHERS BANK, FSB; LEHMAN    )
BROTHERS HOLDINGS, INC.;      )
DANA CAPITAL GROUP, INC.;     )
BRIDGE CAPITAL CORPORATION;   )
RESIDENTIAL FINANCE           )
AMERICA, LLC a/k/a RFA;       )
and TIEMPO ESCROW II,         )
                              )
     Defendants.              )
```

OPINION AND ORDER

Plaintiffs John David Brannon and Teresa Gayle Brannon brought this lawsuit pursuant to various federal statutes, including the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., and the Truth in Lending Act, 12 U.S.C. § 2601, et seq. The Brannons' central allegation is that the defendants, including Bridge Capital

1

Corporation (BCC), suppressed or misrepresented the terms of a mortgage refinancing loan. Subject-matter jurisdiction is proper under 12 U.S.C. § 2614, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

This case is before the court on BCC's motion to dismiss for lack of personal jurisdiction. The thrust of BCC's motion that it is a California corporation and has not, and would not, do business in Alabama. The Brannons respond that, through its allegedly fraudulent behavior, BCC established that it was subject to jurisdiction in Alabama. For the reasons that follow, BCC's motion will be denied.

## I.  STANDARD OF REVIEW

On a motion to dismiss in which no evidentiary hearing is held, a plaintiff need establish only a prima-facie case of jurisdiction. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir.1990). "The district court must accept the facts alleged in the complaint as true, to the

extent they are uncontroverted by the defendant's affidavits." <u>Id</u>. at 1514. Where the parties' evidence conflicts, all evidence relating to jurisdictional facts is to be construed in the light most favorable to the plaintiff. <u>Mutual Service Ins. Co. v. Frit Industries, Inc.</u>, 358 F.3d 1312, 1319 n. 6 (11th Cir.2004).

## II. FACTS

The following facts are construed in the light most favorable to the plaintiffs:

In September 2005, the Brannons submitted an online application for refinancing of their mortgage. Several lenders, who apparently had access to applications generated by the website to which the Brannnons submitted their application, replied. One of those who replied was Elmer Rodan, who at various times identified himself as an employee of various companies, including BCC.

In a letter dated September 19, 2005, BCC Branch Manager Jason McAffee sent the Brannons a letter stating

3

that, contingent upon certain conditions, the company
agreed to submit a refinancing of the Brannons' loans; to
cover their brokerage fees and their origination fees;
and to give the Brannons the "lowest fixed rate."[1] Pf.'s
Response in Opp. M. Dismiss, Exhibit 4, "Offer Letter."
These promises were contingent upon four conditions being
met for 12-to-24 months: (1) all payments on the first
mortgage being made on time; (2) the property maintaining
its value; (3) "overall consumer credit [being] paid as
agreed"; and (4) the Brannons' debt-to-income ratio
meeting "Fannie Maye guidelines." Id. A "Loan Package"
was attached to the letter, with each page signed by
Rodan. Id., Exhibit 6, pp. 2-4, "Loan Package." The
package specified which loans were to be refinanced and
the amount of those loans, as well as the Brannons'
projected savings on monthly payments. In addition, BCC
sent the Brannons a referral sheet, also signed by Rodan,

_____

        1. It is not clear from the letter to whose lowest
fixed rate the letter refers.

4

soliciting further business. <u>Id</u>., p. 1, "Referral Sheet."

### III.  DISCUSSION

When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing that the exercise of personal jurisdiction over the defendant comports with certain fundamental requirements. First, the requirements of the forum State's long-arm provision must be met. Second, the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution must be met. <u>Olivier v. Merritt Dredging Co.</u>, 979 F.2d 827, 830 (11th Cir. 1992). In this case, the two are coextensive, as Alabama's long-arm provision extends to the limits of due process. Ala. R. Civ. P. 4.2(b).

The due-process inquiry, in turn, has two requirements. First, the defendant must have "certain minimum contacts" with the forum State and, second, the

exercise of jurisdiction over the defendant must not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945).

    a.  Minimum Contacts

    Personal jurisdiction is of two sorts: "specific" and "general." Here, the Brannons allege only specific jurisdiction. To constitute minimum contacts for purposes of specific jurisdiction, the defendant's contacts with the applicable forum must be related to the plaintiff's cause of action or have given rise to it; involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and be such that the defendant should reasonably anticipate being haled into court in the forum. United States SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997).

    There is no question that the contacts alleged by the

6

Brannons relate to one or more of their causes of action; the Brannons allege that the refinancing offer issued by BCC constituted the alleged intentional or negligent misrepresentation.

The second and third requirements are more contentious. BCC challenges principally the contention that it "purposefully availed" itself of conducting activities in Alabama, arguing that, because it is not licensed to do business here it could not have had minimum contacts with the State, and, because it could not receive any compensation for any transactions here, it would be illogical for it have any contacts here. It further argues that its involvement with the Brannons and Alabama was initiated by the Brannons and that its involvement can therefore be analogized to a passive advertisement on a website, not directed at any particular place. It thus also argues that it could not have anticipated being haled into court in Alabama.

BCC is correct that whatever minimum contacts the Brannons present to meet their burden must establish that BCC directed its conduct at the forum and that the ~~Brannons'a~~ plaintiff's actions alone are not enough to establish personal jurisdiction. "No plaintiff can establish jurisdiction over a defendant through his own actions." Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1356 (11th Cir. 2000); see also Hanson v. Denckla, 357 U.S. 235, 253 (1958). Nor can a mere "fortuitous circumstance," like the unforseen transportation of a product into a State, establish minimum contacts. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). However, the evidence presented here belies BCC's contention that it was a mere passive actor in this case, such that it did not have minimum contacts with Alabama.

Calder v. Jones, 465 U.S. 783, 789-90 (1984), establishes that, where a defendant directs its behavior toward an individual or individuals in a particular

8

State, and knows that the effect of the action will be felt in that State, the defendant must "reasonably anticipate being haled into court there." In <u>Calder</u>, the author of a newspaper article was sued for libel; the author had virtually no contact with the forum State, and certainly did not deliver the newspaper to the forum State, but knew that the effects of its article would be felt where the subject of the article lived. This--the intentional direction of action, knowing that it will have an effect in the forum State--was, in the Supreme Court's view, enough to justify personal jurisdiction. <u>Id</u>.

Later, in <u>Asahi Metal Industry Co. v. Superior Court of California</u>, 480 U.S. 102 (1987), which concerned the entry of products into the stream of commerce, the Supreme Court divided on the analysis of purposeful availment, but Justice O'Connor, who applied the most restrictive reading of that standard, <u>Morris v. SSE, Inc.</u>, 843 F.3d 489, 493 (1988), stated that certain

conduct by a defendant may "indicate an intent or purpose to serve the market in the forum State," such that purposeful direction may be found.  As examples of such conduct, Justice O'Connor cited, "designing the product for the market in the forum State, advertising in the forum State, [or] establishing channels for providing regular advice to customers in the forum State."  <u>Asahi</u>, 408 U.S. at 112.

Similarly, in <u>Molina v. Merritt & Furman Ins. Agency, Inc.</u>, 207 F.3d 1351, 1356 (11th Cir. 2000), the Eleventh Circuit Court of Appeals stated that "the defendant has 'fair warning' if he purposefully directs his activities at the forum and injury claims result from those activities."  In <u>Molina</u>, the broker defendant was found to have had no direct contact with Alabama whatsoever, not even to have sent a letter to Alabama; rather, all dealings related to the procurement of insurance by the broker occurred in Florida.  However, the broker located insurance for a boat located in Alabama.  According to

the appellate court, once the broker agreed to procure insurance for a boat anchored in Alabama, it "purposefully availed [itself] of the opportunity to do business _with_ an Alabama resident _in_ Alabama." <u>Id</u>. at 1357 (emphasis in original).

From these cases it is apparent that the purposeful availment and reasonable anticipation are interrelated, if not essentially different ways of saying the same thing. <u>Compare</u> <u>Carillo</u>, 115 F.3d at 1545 ("It is well settled that advertising that is reasonably calculated to reach the forum may constitute purposeful availment of the privileges of doing business in the forum.") <u>with</u> <u>id</u>. at 1546 ("The Supreme Court has previously held that defendants whose 'intentional actions were expressly aimed at [the forum]' could reasonably anticipate being haled into court there."). These cases also stand for the straightforward principle that, where the defendant has designed its product for a particular State's market (as opposed to simply the national market), advertised

11

the product there, solicited business there focused on activities and people in the State, and knew that its business activities would have a concrete and predictable effect there, the defendant cannot argue that it did not direct its activities so as to establish minimum contacts in that State. It is clear from the evidence presented here that the mortgage offer establishes minimum contacts under this standard.

First, BCC clearly directed its activities toward the Brannons, and not the other way around. The Brannons submitted an online application, with no expectation of any particular company responding. The Brannons did not submit their application directly to BCC; rather, BCC sought out their application, and responded to them. The resulting "offer" sent to the Brannons reflects that not just Alabama residents generally, but a specific consumer in Alabama was targeted; BCC's actions evince intent to conduct business on an ongoing basis with a particular consumer in Alabama. This is not an unfocused

solicitation, such as an advertisement on a nationally oriented website might be thought to be.  The offer was clearly a solicitation of the Brannons' business, and not purely informational; BCC's response to the Brannons twice states that the BCC representative wants to "earn [the Brannons'] business."  Pf.'s Response in Opp. M. Dismiss, Exhibit 6, pp. 2,3, "Loan Package."   BCC thus directed its conduct to the Brannons, and thus to Alabama.

Further, the product (the refinancing offer) was designed for Alabama.  The offer was based on the value of the Brannons' existing loans, id., p. 3, and the value of a house owned by the Brannons in Dothan, and it was conditioned on the value of that house not substantially changing.  Id., Exhibit 4.  Thus, the value of the offer, and presumably the basis of the offer, for both BCC and the Brannons hinges on loans made and paid in Alabama, and on  on the health of a housing market in Alabama.

Finally, it is clear that BCC anticipated ongoing

13

business concerning the Alabama property with the Alabama residents; the offer was based on a probationary period of two years. Id.

BCC solicited business in Alabama by offering to refinance a house in Alabama with Alabama residents. The offer letter was sent to the Brannons, and a FedEx package was provided for them to sign documents and send back. Id., Exhibit 6, p. 2. BCC apparently appraised the house, and conditioned the offer on the stability of the value of the house.[2] BCC's contention that it did not, and would not, do business in Alabama, if not roundly disproved by the evidence, is irrelevant to the minimum-contacts calculus. BCC established non-fortuitous connections, through its own directed action. Minimum contacts have been established.

---

2. In addition to the offer being based on the value of the house not changing, David Brannon requested, on October 3, 2005 (14 days after the date of the offer letter), a copy of his appraisal from Rodan at a "elmer@bridgecapcorp.com," the email address given in the loan package. Pf.'s Response in Opp. M. Dismiss, Exhibit 6, p. 4.

14

b.  Fair play and substantial justice

In evaluating whether the exercise of jurisdiction comports with fair play and substantial justice, the court must consider such factors as the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

Although BCC does not appear to argue that the exercise of jurisdiction over it would not comport with fair play and substantial justice, the court still considers the issue and finds that the exercise of jurisdiction comports.  The burden on BCC in defending the suit in Alabama is slight, especially given modern

15

modes of transportation, and the Brannons, as Alabama citizens, have a substantial interest in the resolution of the case in Alabama. Alabama has a strong interest in protecting its citizens who have been defrauded. <u>Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.</u>, 207 F.3d 1351, 1358 (11th Cir. 2000). There is nothing to suggest that the exercise of jurisdiction in Alabama will undermine efficiency; to the contrary, given that the remainder of the transactions involved in this lawsuit, including those involving the many other defendants, are being evaluated by this court, it would not be efficient to break off of any the claims against BCC. See <u>Huey v. American Truetzschler Corp.</u>, 47 F.Supp.2d 1342, 1349 (M.D. Ala. 1999) (Thompson, J.) (discussing how avoiding "splintering" a case serves efficiency).

* * *

16

Because defendant Bridge Capital Corporation directed its activity into Alabama and established minimum contacts here and because the exercise of jurisdiction in Alabama would not offend notions of fair play and substantial justice, it is ORDERED that defendant Bridge Capital Corporation's motion to dismiss (doc. no. 11) is denied.

DONE, this the 15th day of February, 2007.

                    /s/ Myron H. Thompson
              UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2.   __Time for Filing__: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

(a)   **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

(b)   **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

(c)   **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

(d)   **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

(e)   **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.   __Format of the notice of appeal:__ Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.   __Effect of a notice of appeal:__ A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).