IN THE UNITED STATES DISTRICT COURT FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

| | |
|---|---|
| JOHN DAVID BRANNON and ) | |
| TERESA GAYLE BRANNON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 1:06cv996-MHT |
| ) | (WO) |
| RESIDENTIAL FINANCE ) | |
| AMERICA, LLC, ) | |
| ) | |
| Defendant. ) | |

OPINION

Plaintiffs John David Brannon and Teresa Gayle Brannon brought this action against defendant Residential Finance America, LLC (RFA), asserting state-law claims for negligence, negligence per se, negligent supervision, and fraud as well as violations of the Truth in Lending Act (15 U.S.C. § 1601 et seq.), the Real Estate Settlement Practices Act (12 U.S.C § 2601 et seq.), the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.), and the Equal Credit Opportunity Act (15 U.S.C. § 1691 et seq.).

This case is before the court on the Brannons' application for damages following the entry of default judgment against RFA. The court, having taken testimony from the Brannons and having heard arguments from their counsel, Robert E. Kirby, Jr., finds as follows.

## I. FINDINGS OF FACT

This lawsuit was filed on November 2, 2006. RFA was timely and properly served but has filed no responsive pleadings. RFA was provided with proper notice of the motion for default and the evidentiary hearing on damages. Because RFA failed to appear before this court, the Brannons' claims are uncontroverted and deemed proven by default.

The Brannons's claim for damages totals $ 127,146.17 and includes statutory damages, actual economic damages as defined by the various federal lending statutes, compensatory damages, and punitive damages as follows:

| | |
|---|---|
| $ 6,529.17 in actual economic damages, representing the difference between the amount of money the Brannons were promised as an equity "cash out" at closing and the amount they actually received, plus interest calculated at the average rate the Brannons were charged on the loan for the period of time beginning at the closing date and ending at the present time | $ 6,529.17 |
| $ 2,459.16, plus interest, for reimbursement of duplicative, unearned, and/or excessive fees charged to the Brannons' loan at closing | 2,459.16 |
| $ 3.157.84, plus interest, for the difference in the monthly payment promised to the Brannons and the monthly amount they were actually charged | 3,157.84 |
| $ 10,000 in statutory damages under 15 U.S.C § 1691e(b) for violations of the Equal Credit Opportunity Act | 10,000.00 |
| $ 4,000 in statutory damages under 15 U.S.C § 1640(a)(2)(A)(iii) for violations of the Truth in Lending Act | 4,000.00 |
| $ 1,000 in statutory damages under 15 U.S.C § 1681n(a)(1)(A) for violations of the Fair Credit Reporting Act, pursuant to the Brannons' state-law and federal lending-statutes claims | 1,000.00 |

| | |
|---|---|
| $ 25,000 per plaintiff for compensatory damages, including mental anguish, emotional distress, humiliation, embarrassment, and degradation of their credit | 50,000.00 |
| $ 25,000 per plaintiff for punitive damages, pursuant to their state-law claims of fraud, including promissory fraud and intentional misrepresentation | 50,000.00 |
| TOTAL | $ 127,146.17 |

In support of their damages claims, the Brannons submitted the affidavit of Robert E. Kirby, Jr. with supporting exhibits, including the HUD-1 Settlement Statement relative to the loan at issue evidencing the actual terms of the loan, an email and other documents evidencing the promised terms of the loan, and amortization schedules detailing the application of interest to the underlying economic damage amounts where such amounts are directly related to those damages resulting from the change of terms.

Each of the Brannons provided testimony in open court. David Brannon testified that, had the loan closed at the terms promised, his household budget would have

been structured in such a way that his credit would not have been impaired.  As a result of the change in terms, especially the reduced amount of "cash-out" and the increase in payment amount, he was unable to restructure his debt and make timely payments, resulting in harm to his credit rating, a bankruptcy filing, and an increased cost of all credit.  David Brannon also testified that, as the manager of a Wal-Mart store, the foreclosure publishings caused him embarrassment and humiliation.

    Gayle Brannon testified that the loan transaction and resulting financial difficulties caused her to file for bankruptcy, which in turn caused problems at her job at a bank.  She suffered severe emotional distress and required medical treatment and prescription medicines to control her depression, anxiety, and sleeplessness.  She was compelled to sell her family home, which she was very fond of and previously had no intention of selling.

The court finds the uncontroverted evidence and arguments presented by the Brannons and their counsel to be credible and well taken.

## II. CONCLUSIONS OF LAW

At ¶ 40 of the Brannons' complaint, they allege that "RFA [was] negligent in the marketing, origination ... closing and/or funding of Plaintiffs' mortgage application and loan." At ¶ 42, they allege that "RFA undertook to volunteer and provide oral and written pre-closing disclosures to Plaintiffs about the terms applicable to their specific loan" and "did so negligently by failing to timely, accurately and completely inform Plaintiffs of the details and costs of the transaction." At ¶ 43, they allege that "RFA negligently, intentionally or recklessly misrepresented and/or concealed the terms of Plaintiffs' loan." At ¶ 44, they allege that, "Although under no duty to do so ... RFA undertook to originate, process, close, fund ...

a mortgage loan for Plaintiffs" and "did so negligently or recklessly." At ¶ 50, they allege that RFA's "acts of negligence were committed under circumstances of insult and contumely." The Brannons also provide support for their claim of economic and compensatory damages in ¶¶ 45-49, 51, and 53 of their complaint. The Brannons properly alleged that RFA's wrongful conduct proximately or directly caused the damages sought.

As a result of the above allegations, the Brannons claim economic compensatory damages in the amounts of $ 6,529.17 (representing the difference between the amount of money they were promised as an equity "cash out" at closing and the amount they actually received), $ 2,459.16 (for reimbursement of duplicative, excessive, or unearned fees), and $ 3,157.84 (for reimbursement of the payment differential between what was promised and what was actually charged), plus interest on all those amounts calculated at the average rate the Brannons were charged on the loan for the period of time beginning at

the closing date and ending at the present time. The court finds that the Brannons' claims are supported by the uncontroverted allegations within their complaint, the evidence presented at the evidentiary hearing, Alabama law, and the federal lending statutes relied upon by the Brannons. See Segars v. Reaves, 567 So.2d 249, 250 (Ala. 1990) ("The party claiming damages has the burden of establishing by competent evidence the existence of damages and the amount of those damages."). The court also concludes that the Brannons' claims for $ 25,000 each for compensatory damages, based upon the mental anguish, severe emotional distress, embarrassment and humiliation they have suffered, are so supported. See Skipper v. S. Cent. Bell Tel. Co., 334 So.2d 863, 866 (Ala. 1976) ("Embarrassment and humiliation are actual injuries."); 15 U.S.C. § 1640(a)(1) (providing for compensation for "any actual damage sustained by [a] person" resulting from failure to comply); 15 U.S.C § 1691e(a) (same).

8

The Brannons also seek punitive damages in the amount of $ 25,000 each for their state-law claims, alleging that RFA engaged in willful, wanton, intentional and fraudulent conduct which directly or proximately caused them damage. Compl. (Doc. No. 1), at ¶¶ 18-19, 22, 25-31, 33, 35-37, 51, 53, 55-60. The court finds that their reliance upon RFA's written and verbal misrepresentations was both reasonable and justified. See Potter v. First Real Estate Company, Inc., 844 So. 2d 540, 552-553 (Ala. 2002) ("In order to recover for misrepresentation, the plaintiffs' reliance must ... have been reasonable under the circumstances."). The Brannons' claims for punitive damages pursuant to their state-law claims are supported by their pleadings, evidence presented at the evidentiary hearing, and Alabama Law. See Parker v. Johnson-Smith Realty, Inc., 465 So.2d 415, 418-19 (Ala. 1984) (punitive damages available for fraudulent misrepresentation).

The Brannons further claim punitive damages in the maximum statutory amount of $ 10,000 pursuant to the

Equal Credit Opportunity Act, 15 U.S.C. § 1691e(b). The uncontroverted allegations of their complaint support the court's finding that RFA violated 15 U.S.C § 1691(d)(6) by willfully failing to provide the Brannons with the required Adverse Action Notice when the terms of the loan were unilaterally changed from the terms found in previous pre-closing disclosures.

The Brannons are entitled to their claimed statutory damages in the amount of $ 4,000 pursuant to 15 U.S.C §§ 1640(a)(2)(A)(iii) and 1635(g). This amount includes $ 2,000 for their uncontroverted allegation that RFA failed to provide the required number of properly completed Right to Cancel forms at closing in violation of 15 U.S.C § 1635(a), as defined and interpreted in 12 C.F.R. §§ 226.2(a)(11), 226.23(a)(3), and 226.23(b)(1). It also includes statutory damages in the amount of $ 2,000 for RFA's failure to timely rescind the loan upon demand in violation of 15 U.S.C § 1635(b).

The Brannons are also entitled to their claimed statutory damages in the amount of $ 1,000 pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681n(1)(A), for RFA's violation of § 1681m(a) by willfully failing to provide the Brannons with the required Adverse Action Notice when the terms of the loan were unilaterally changed from the terms found in previous pre-closing disclosures.

Finally, the Brannon's attorney, Robert E. Kirby, Jr., seeks an award of attorney fees in the amount of $ 9,250.00 and reimbursement of out-of-pocket expenses in the amount of $ 1,132.78, for a total of $ 10,382.78. The court finds that attorney fees and expenses are recoverable under each of the Brannons' claims under the federal lending statutes. 15 U.S.C. §§ 1640(a)(3), 1681n(a)(3), 1692k(a)(3). Counsel seeks a fee in the amount of $ 250.00 per hour for 37 hours expended in the preparation of the Brannons' case. This court has considered Kirby's affidavits and his oral argument

before the court at the evidentiary hearing.  The court finds that counsel's experience in and knowledge of this area of law, together with his expended efforts, justify such an award.  The court also finds that the out-of-pocket expenses incurred by counsel are reasonable.

***

In conclusion, the court finds that the Brannons are entitled to $ 127,146.17 in damages and $ 10,382.78 for attorney's fees and expenses from RFA.  An appropriate judgment will be entered.

DONE, this the 19th day of February, 2008.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**